FILED
United States Court of Appeals
Tenth Circuit

June 11, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SEAN JOSEPH PETERSON,

Defendant-Appellant.

No. 12-2201
(D.C. No. 1:10-CR-01919-JB-1)
(D. N.M.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **KELLY** and **TYMKOVICH**, Circuit Judges.

Following his acceptance of a plea agreement that included a waiver of his

right to appeal, Sean Joseph Peterson pleaded guilty to two federal drug offenses:

(1) possessing with intent to distribute 100 kilograms and more of a mixture and

substance containing a detectable amount of marijuana in violation of 21 U.S.C.

---

[*]    This panel has determined that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The
case is therefore ordered submitted without oral argument.  This order and judgment
is not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 841(a)(1) and (b)(1)(B); and (2) conspiring to possess with intent to distribute 100 kilograms and more of a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. At sentencing, the district court determined that the applicable advisory guidelines sentencing range was 188 to 235 months imprisonment. The court granted Mr. Peterson a variance, however, and imposed a below-guidelines sentence of 110 months on each count, to be served concurrently. Despite the appeal waiver in his plea agreement, Mr. Peterson is now appealing his sentence. We grant the government's motion to enforce the appeal waiver and dismiss this appeal.

## I. BACKGROUND

### A. The Sentencing Provisions in the Plea Agreement

In the plea agreement, the government and Mr. Peterson stipulated that his base offense level under the sentencing guidelines was 26 and that he was entitled to a three-level reduction for acceptance of responsibility. However, the government reserved the right "to assert any position or argument with respect to the sentence to be imposed, including . . . the applicability of . . . adjustments under the guidelines." Plea Agreement at 5.[1] In addition, Mr. Peterson agreed to the following with regard to the sentencing stipulations in the plea agreement:

> The Defendant understands that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a

---

[1] The plea agreement is attached to the government's motion to enforce as Exhibit 1.

matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. The Defendant understands that if the Court does not accept any one or more of the above stipulations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any stipulations the parties may enter into, the Defendant's final sentence is solely within the discretion of the Court.

*Id.* at 6.

## B. Mr. Peterson's Prior Felony Convictions

As part of the plea agreement, Mr. Peterson agreed that he had previously been convicted of two felony drug offenses in state court in Kentucky. Mr. Peterson also agreed that he would "not bring a challenge to the validity or applicability of these convictions." *Id.* at 7. For its part, the government agreed not to file any sentencing enhancement under 21 U.S.C. § 851 for either of Mr. Peterson's prior convictions.

## C. The Appeal Waiver

By signing the plea agreement, Mr. Peterson agreed to the following appeal waiver:

The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction and any sentence within or below the applicable advisory guideline range as determined by the Court. The Defendant specifically agrees not to appeal the Court's resolution of any contested sentencing factor in determining the advisory sentencing guideline range. In other words, the Defendant waives the right to appeal both the Defendant's conviction and the right to appeal any sentence imposed in this case except to the extent, if any, that the Court may depart or vary upward from the advisory sentencing

guideline range as determined by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

*Id.* at 7-8.

### D. The Plea Hearing

At the commencement of the plea hearing, the magistrate judge asked counsel for the government to outline the salient provisions in the plea agreement. Among other matters, counsel for the government then informed the magistrate judge about the stipulation in the plea agreement concerning Mr. Peterson's base offense level. Specifically, counsel stated the following:

> The Defendant has insisted that the United States place the base offense level in Paragraph 9(a). The United States has placed that in there and accordingly the parties agree that the Defendant's base offense level under the Sentencing Guidelines is 26, pursuant to U.S. Sentencing Guideline 2D1.1(c)(7). The United States wants to make it clear to the Court that that's not a stipulation as to the offense level of the Defendant in the case at sentencing. That is the base offense level before any adjustments, either a downward adjustment for acceptance of responsibility or upward adjustment for career offender status. The United States asks that this Court inquire if the Defendant understands that so there won't be any contrary misunderstanding at sentencing that he was somehow pleading to an Offense Level of 26 for the entire case.

> The Defendant has requested and received a Form 13 PSR. In that PSR Probation has correctly noted that his two qualifying felony convictions render him a career offender under the guidelines, which the United States anticipates will be an Offense Level 34, minus his three points for acceptance of responsibility.

- 4 -

Plea Hrg. Tr. at 3-4.[2]

In response to the request by counsel for the government concerning the base offense level stipulation, the magistrate judge thereafter had the following colloquy with Mr. Peterson:

> **THE COURT**:  Mr. Peterson, [counsel for the government] has asked me to specifically inquire concerning the parties' inclusion of the base offense level of 26 in the Plea Agreement.  [Counsel] has explained that while the United States has been willing to put 26 as the base offense level, from that offense level there can be additions to or deductions from that base offense level, depending on various factors and conduct.
>
> Do you understand that?
>
> **THE DEFENDANT**:  Yes.
>
> **THE COURT**:  In other words, the United States is not stipulating that the only - - that the adjusted level is 26, that is only the base level.
>
> Is that clear?
>
> **THE DEFENDANT**:  Yes.

*Id.* at 12.

The magistrate judge also had a colloquy with Mr. Peterson regarding the appeal waiver to ensure that he understood the scope of the waiver:

> **THE COURT**: . . . Your Plea Agreement specifically requires you to give up your right to appeal, so long as the sentence imposed by [the district judge] is at or under the guideline range.  Should the Court depart upward, you preserve your right to appeal.

---

[2]   The October 19, 2011, plea hearing transcript is attached to the government's motion to enforce as Exhibit 2.

You are also giving up your right to challenge your conviction or your sentence at a later date in what is called a post-conviction challenge under 28 U.S.C. Section 2255. You would be giving up that right for all reasons except if [your counsel] was constitutionally ineffective in his representation in negotiating this Plea Agreement and representing you in the negotiations and obtaining the waiver or the entry of the plea.

Do you understand you would be giving up those rights if you plead guilty today?

**THE DEFENDANT**: Yes.

*Id.* at 15.

Finally, the magistrate judge asked Mr. Peterson if he understood that he was "agreeing or admitting that [he has] two prior and valid convictions that are set out [in the] Plea Agreement." *Id.* at 16. Mr. Peterson responded in the affirmative.

### E. Mr. Peterson's Sentence

As stipulated by the parties, Mr. Peterson's base offense level was 26. Based on Mr. Peterson's two prior felony convictions, plus a prior misdemeanor conviction for driving under the influence, his criminal history category was II. However, the probation office recommended a career offender enhancement pursuant to USSG § 4B1.1 because Mr. Peterson had two prior qualifying felony convictions. Applying the career offender enhancement and a three-level reduction for having accepted responsibility, Mr. Peterson's base offense level increased to 31 and his criminal history category increased to VI, giving him a guidelines sentencing range of 188 to 235 months imprisonment.

At the sentencing hearing, the district court concluded that the sentencing range set forth in the guidelines was not appropriate for Mr. Peterson's offenses, and the court therefore granted Mr. Peterson a downward variance. The court determined that three factors supported a downward variance. First, the court found that the career offender enhancement substantially overstated Mr. Peterson's criminal history. Second, the court believed that the career offender enhancement overstated his likely future criminal activity. Third, the court determined that Mr. Peterson's background, which included military service and a difficult family up-bringing, counseled in favor of a variance. In light of these factors, but still taking into consideration the fact that Mr. Peterson fit squarely into the career offender category as defined by Congress, the court decided to use a final offense level of 28 and a criminal history category of IV, which resulted in a guidelines sentencing range of 110 to 137 months imprisonment. Using this sentencing range, the court then imposed a low-end sentence of 110 months imprisonment.

## II. DISCUSSION

The government has filed a motion to enforce Mr. Peterson's appeal waiver. *See United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (per curiam). Under *Hahn*, in evaluating a motion to enforce an appeal waiver, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage

of justice." *Id.* at 1325. Mr. Peterson has conceded that this appeal falls within the scope of his appeal waiver. Thus, we need only address the second and third prongs of the *Hahn* analysis.

With regard to the second prong, Mr. Peterson has advanced two primary arguments. First, relying on the Fifth Circuit's decision in *United States v. Roberts*, 624 F.3d 241 (5th Cir. 2010), Mr. Peterson argues that the government violated the plea agreement "[b]y agreeing with the career offender enhancement recommendation in the presentence report and by supporting a different base offense level at sentencing than that to which the Government had previously stipulated." Aplt. Resp. at 8; *see also id.* at 9 ("Thus, the Government did violate the plea agreement, just as in *Roberts*. Defendant's appeal waiver does not preclude him from making this argument on appeal."). We reject this argument, however, because, at the sentencing hearing, Mr. Peterson's trial counsel affirmatively waived any argument under *Roberts* to the effect that the government violated the plea agreement in this case. *See* Sent. Hrg. Tr. at 37-38.[3] Given this affirmative waiver, Mr. Peterson is not entitled to any form of relief on direct appeal based on *Roberts*, and this includes plain error review.[4] *See United States v. Teague*, 443 F.3d 1310, 1314-15 (10th Cir. 2006).

---

[3] The April 26, 2012, sentencing hearing transcript is attached to the government's motion to enforce as Exhibit 3.

[4] Mr. Peterson has indicated that he "intends to file a habeas petition to raise ineffective assistance of counsel" concerning his trial counsel's failure to argue at

(continued)

- 8 -

Second, Mr. Peterson argues that his "guilty plea was neither knowing nor voluntary," and that, "therefore, the waiver within the plea agreement was neither knowing nor voluntary." Aplt. Response at 7. According to Mr. Peterson:

> Defendant understood that because the base offense level was explicitly stated in the plea agreement, there would be no career enhancement. He believed that stating the offense level in the plea agreement worked as a safety valve that would allow his case to bypass the career enhancement. His understanding was based on federal law in Texas.

*Id.* In addition, Mr. Peterson argues that there was an inadequate colloquy during the plea hearing regarding the possibility of an upward adjustment based on the career offender enhancement:

> While the plea hearing demonstrates that Defendant understood that there could be an addition to, or deduction from, the base offense level to which the Government had stipulated, the colloquy does not demonstrate that Defendant understood that the Government could advocate for an entirely new offense level eight levels higher.

*Id.* at 10.

We review these arguments only for plain error since Mr. Peterson never raised them in the district court proceedings. *See Teague*, 443 F.3d at 1314. We see no plain error here. To begin with, Mr. Peterson's purported "understanding" of the base offense level stated in the plea agreement is based on the arguments of his appellate counsel, and there is no evidentiary record to support his claimed

sentencing that the government violated the plea agreement. Aplt. Resp. at 9. Although it does not appear that his appeal waiver would bar such a collateral attack, we express no opinion on that question here. We note, however, that Mr. Peterson is barred from asserting an ineffective assistance of counsel claim in this direct appeal. *See United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005).

understanding. Further, as set forth above, during the plea hearing and in the presence of Mr. Peterson, counsel for the government asked the magistrate judge to explain to Mr. Peterson that his base offense level could be adjusted upward based on the career offender enhancement. *See* Plea Hrg. Tr. at 3-4. In response to this request, the magistrate judge proceeded to explain to Mr. Peterson that the base offense level of 26 could be adjusted upward "depending on various factors and conduct." *Id.* at 12. Mr. Peterson then said "Yes" when the magistrate judge asked him if he understood that upward adjustments were possible. *Id.* We conclude that this was an adequate plea colloquy concerning the potential for upward adjustments, including the career offender enhancement.

Finally, we do not believe that enforcing Mr. Peterson's appellate waiver will result in a miscarriage of justice. Mr. Peterson's criminal background fell squarely into the career offender category as defined by Congress, but the district court was imminently fair to Mr. Peterson in that it varied downward substantially from the advisory guidelines sentencing range of 188 to 235 months imprisonment.

The motion to enforce is granted, and this appeal is dismissed.

Entered for the Court
Per Curiam